# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| RACING HEAD SERVICE, LLC and ) <br> COMPETITION CAMS, INC., ) <br> ) <br>     Plaintiffs, ) <br> ) <br> ) <br> vs. ) <br> ) <br> MALLORY ALEXANDER INTERNATIONAL ) <br> LOGISTICS, LLC, JALAR ) <br> TRANSPORTATION, INC., HARRINGTON ) <br> TRANSPORTATION, INC., AND JOHN ) <br> DOES 1 THROUGH 10, ) <br> ) <br>     Defendants. ) | Civil Action No. _____ <br> JURY DEMANDED |

## COMPLAINT

Plaintiffs, Racing Head Service, LLC and Competition Cams, Inc. (collectively, "Plaintiffs"), hereby bring this action against Defendant, Mallory Alexander International Logistics, LLC, Jalar Transportation, Inc., Harrington Transportation, Inc., and John Does 1 through 10. For their complaint, Plaintiffs states as follows:

### PARTIES

1. Plaintiff, Racing Head Service, LLC. ("RHS"), is a wholly-owned subsidiary of Plaintiff Competition Cams, Inc., with its principal place of business located at 3406 Democrat Road, Memphis, Tennessee 38118.

2. Plaintiff, Competition Cams, Inc. ("Comp Cams"), is a Tennessee corporation with its principal place of business located at 3406 Democrat Road, Memphis, Tennessee 38118. Collectively, RHS and Comp Cams will be referred to herein as Plaintiffs.

3. Defendant, Mallory Alexander International Logistics, LLC ("Mallory"), is a Tennessee Limited Liability Company with its global headquarters located at 4294 Swinnea Road, Shelby County, Memphis, Tennessee 38118. Mallory can be served with process through its Chairman, CEO, and Registered Agent for Service of Process, W. Neely Mallory, Jr.

4. Defendant, Jalar Transportation, Inc. ("Jalar"), is a South Dakota Corporation located at 1100 Mount Rushmore Road, Suite 1, Custer, South Dakota 57730. Jalar can be served with process through its registered agent, John K. Nooney, 632 Main Street, Second Floor, Rapid City, South Dakota, 57701.

5. Defendant, Harrington Trucking, Inc. ("Harrington"), is a Utah Corporation located at 510 South DeLong Street, Salt Lake City, Utah 84104. Harrington can be served with process through its registered agent, Irene Warr, 5285W. 2400 S., West Valley City, Utah 84120.

6. John Does 1 through 10 each participated in some respect in the handling or interstate shipment of the Equipment (as hereinafter defined).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises from the carriage of goods in interstate commerce and may be governed by federal statues related thereto including, but not limited to the Carmack Amendment, 49 U.S.C. § 14706 and/or the Carriage of Goods by Sea Act, 46 U.S.C. §§ 30701 *et seq.* There is also pendent, ancillary and supplemental jurisdiction as to certain aspects of the claim in suit. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

8. Venue is proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred in this judicial district and the Defendants conduct

business in this judicial district.

**FACTS**

9. This action involves the destruction of a custom-built Okuma MA-60 Horizontal Machining Center and related equipment (the "Equipment") during tranportation provided and/or arranged by Mallory from Auckland, New Zealand to Plaintiffs' customer, Royal Oak Boring, in Lake Orion, Michigan.

10. The Equipment was transported in two components by two separate containers identified as AMZU4152670 and TOLU4607606. Both containers were severely damaged in transport.

11. The Equipment was exported from the port of Auckland, New Zealand on or about July 31, 2007 with an estimated date of arrival in Philadelphia, Pennsylvania on or about August 22, 2007. Mallory then arranged for the moving and ground transportation of the Equipment from the Philadelphia port to Cleveland, Ohio by way of Jalar then to Michigan by way of Harrington.

12. Upon information and belief, the damage occurred on multiple occasions on United States soil, during Mallory's removal of the Equipment from the Philadelphia, Pennsylvania port (the "Port") and during transport to its destination in Lake Orion, Michigan by Jalar, Harrington and John Does 1 through 10, each of which were engaged by Mallory to transport the equipment for Plaintiffs.

13. Each isolated incident of damage to the Equipment resulted in such substantial injury to the Equipment as to render the Equipment completely unusable, unsellable, and unfit for its intended purposes.

14.     Plaintiffs did not have direct communication or interaction with any of the freight carriers, crane operators, equipment operators, or other transporters or service providers who handled and moved the equipment; all such communication, arrangements, and contracts were made by and through Mallory for the benefit of Plaintiffs.

15.     Mallory and its agents and/or subcontractors, including, but not limited to, Jalar, Harrington and John Does 1 through 10, provided continuous carriage or shipment of the Equipment from the Port to its destination for the benefit of Plaintiffs.

16.     Mallory failed or refused to provide Plaintiffs with legible, readable bills of lading and other shipment documents and contracts related to the transportation of the Equipment by Mallory and/or its agents or subcontractors.  Plaintiffs did not sign or assent to the terms of any such documents and did not agree to be bound by any such documents, if any.

17.     By invoices dated on or about September 22, 2007, Mallory sought payment from Plaintiffs for the services provided by Mallory related to transportation of the Equipment including, but not limited to handling, storage charges, warehouse charges, crane and flatbed charges, tarp removal and transfer, cartage and services, weight verification, clearance charges, and other charges.  True and correct copies of the invoices are attached hereto as collective **Exhibit A**.  Plaintiffs paid Mallory's invoices in full in the total amount of $28,643.12.

18.     Plaintiffs did not directly engage the services of any carrier, freight forwarder, freight transporter, crane operator, equipment operator, laborer, trucker, transporter, or other entity or individual to transport the Equipment from the Port to the destination, other than Mallory.  Other than Mallory, no other carrier, freight forwarder, freight transporter, crane operator, equipment operator, laborer, trucker, transporter, or other entity or individual sought payment for any amounts directly from Plaintiffs for the transport of the Equipment from the

Port to the destination. Plaintiffs relied on the experience, expertise, and promise of Mallory to arrange for and handle the safe and efficient delivery of the Equipment from the Port to its destination in good condition. Plaintiffs paid Mallory directly for all charges related to the shipment of the Equipment from the Port to the destination.

19. The Equipment was delivered to its destination at Royal Oak Boring in Lake Orion, Michigan on or about September 14, 2007 by or though Mallory. Plaintiffs thereafter discovered that the Equipment had been severely damaged on at least two occasions during transportation by Mallory and/or its agents or subcontractors, including Jalar, Harrington and/or John Does 1 through 10, each of which rendered the Equipment completely unfit for its intended purpose.

20. Because the Equipment was a complex custom-built machine, Plaintiffs had the damage inspected by an Okuma factory representative to consult with the factory about the costs to repair both components of the Horizontal Machining Center. The manufacturer declared that the Equipment is not salvageable due to the severity of the damage. A true and correct copy of the manufacturer's Summary of Machine Inspection is attached hereto as **Exhibit B** (the "Damage Report").

21. The declared shipping value of the Equipment is Three Hundered Fifty Thousand Dollars U.S. ($350,000). No part of this amount has been paid although duly demanded.

22. As a result of the severe damage to the Equipment, Plaintiffs were unable to complete the sale of the Equipment to Royal Oak Boring. Plaintiffs have incurred lost profits, reputational damages, and other incidental and consequential damages as a result of the actions and omissions of Mallory and its agents and/or subcontractors, including Jalar, Harrington and John Does 1 through 10. Plaintiffs have also incurred the cost and expenses associated with

replacing the Equipment, including, but not limited to, set up costs and business damages associated with the delay in operations as a result of the destruction of the Equipment.

23. As a result of the severe damage to the Equipment that rendered it unusable, Plaintiffs have also incurred and continue to incur the costs of storing the Equipment at D&D Warehouse in Roseville, Michigan at a rate of $240.00 per month.

24. Plaintiffs have performed all conditions precedent required of them under the premises.

25. Mallory falsely represented to Plaintiffs that it would ensure safe carriage of the Equipment from origin to destination when it did not, in fact, provide the service it represented.

26. Between the date of discovery of the damage to the Equipment and the date of the filing of this action, representatives of Plaintiffs, including Kevin Feeney and Jessica Reed, regularly communicated with representatives of Mallory, including Dawn Lavigne, Denise Cadotte, Karen Hjerpe, and Marc Rubin, for the purposes of obtaining compensation for the damage to the Equipment as well as legible copies of documents critical to Plaintiffs obtaining full information about its potential legal remedies.

27. Throughout much of this time period, Mallory representatives made repeated representations and/or failed to correct what it knew to be Plaintiffs' belief that Plaintiffs' claims would be considered, would be resolved, and that legible copies of key documents were forthcoming. Mallory's manifestations of willingness to cooperate were false and misleading and intended to delay Plaintiffs from taking legal action to pursue payment.

28. Based on the foregoing, Mallory is estopped from defending any portion of this action based on any defense of the statute of limitations and/or laches because: (1) Mallory's acts, statements, or failures to act mislead Plaintiffs; (2) Plaintiffs lacked knowledge of the true

facts and were entitled in good faith to rely on Mallory's acts, statements, or failures to act; (3) Plaintiffs changed their position in reliance on Mallory's acts, statements, or failures to act; and (4) the resulting change in position was to Plaintiffs' detriment.

## COUNT I

### LIABILITY AS FREIGHT FORWARDER, CARRIER, AND/OR NON-VESSEL OPERATING COMMON CARRIER (DEFENDANT MALLORY)

29. Plaintiffs hereby incorporate and re-allege paragraphs 1-28 above as if fully set forth herein.

30. With respect to the Equipment and upon information and belief, Mallory provided services as a common carrier for cargo for hire, including, but not limited to, as a receiving and delivering carrier within the meaning of the Carmack Amendment, 49 U.S.C. § 14706, and assumed responsibility for the transportation of the shipment from the place of receipt to the place of final delivery. Alternatively, Mallory provided services as a freight forwarder within the meaning of the Carmack Amendment and as such assumed liability for the cargo from the place of receipt to the place of final delivery. Alternatively, Mallory provided services as a non-vessel operating common carrier and as such is liable as carrier of the Equipment pursuant to the Carriage of Goods by Sea Act, 46 U.S.C. §§ 30701 *et seq.*

31. The Equipment was delivered in good order and condition into the custody, care, and control of Mallory, or entities acting at its direction, for the purposes of carriage to the agreed destination.

32. Mallory failed to deliver the Equipment at the agreed destination in the same good order and condition. Instead, at the time of delivery by or on behalf of Mallory, the Equipment was in damaged condition and rendered completely unfit for its intended purpose.

33. The Equipment arrived at its destination in Michigan in damaged, unsuitable condition and has been declared unsalvageable by the manufacturer.

34. The aforesaid damage to the Equipment was the result of Mallory's reckless failure to properly carry and care for the Equipment, and its fundamental breaches of, and deviations from, its obligations to Plaintiffs.

35. Mallory failed to issue to Plaintiffs a receipt or bill of lading for the Equipment.

36. Based on the foregoing, Plaintiffs have sustained damages as set forth herein for the loss and injury to the Equipment for which Mallory is liable.

37. As a result of the foregoing, Mallory is liable to Plaintiffs as common carrier, non-vessel operating common carrier, freight forwarder, and/or as bailee for hire.

## COUNT II

### NEGLIGENCE (DEFENDANT MALLORY)

38. Plaintiffs hereby incorporate and re-allege paragraphs 1-37 above as if fully set forth herein.

39. Mallory had a duty to Plaintiffs to arrange, contract, and provide for safe delivery and handling of the Equipment from the Port to the destination.

40. Mallory had a duty to Plaintiffs to ensure that the Equipment was entrusted to competent, qualified freight carriers and transporters, crane operators, equipment operators, laborers, truckers, and other entities or individuals for transportation and delivery of the Equipment from the Port to the destination.

41. Mallory had a duty to Plaintiffs to ensure that all freight carriers and transporters, crane operators, equipment operators, laborers, truckers, and other entities or individuals acting on behalf of or at the direction of Mallory with regard to transportation and delivery of the

Equipment, including Jalar, Harrington and John Does 1 through 10, were provided with the proper specifications including, not limited to weight and height, for appropriate and safe handling of the Equipment.

42. Mallory had a duty to Plaintiffs to ensure that all entities and individuals entrusted with the Equipment by Mallory transported, handled, and/or delivered it safely and without damage.

43. Upon notice to Mallory of the damage to the Equipment, Mallory had a duty to Plaintiffs to lodge the appropriate claims with the entities or individuals with which Mallory contracted or who acted as Mallory's agents for the transportation and delivery of the Equipment from the Port to the destination.

44. Mallory had a duty to Plaintiffs to provide or arrange for insurance coverage for the Equipment at the declared value of $350,000.

45. Mallory breached its duties to Plaintiffs by failing to safely transport and deliver, or failing to arrange for the safe transport and delivery, of the Equipment from the Port to the destination in good condition.

46. Mallory breached its duties to Plaintiffs by failing to lodge appropriate complaints with entities or individuals with which Mallory contracted or who acted as Mallory's agents for the transportation and delivery of the Equipment from the Port to the destination, and/or by failing to ensure that any claims lodge by Mallory for the loss and injury to the Equipment were handled, paid, or satisfied for Plaintiffs' benefit as required by law.

47. Mallory breached its duties to Plaintiffs by failing to provide or arrange for insurance coverage for the Equipment at the declared value of $350,000.

48. Based on the foregoing, Plaintiffs have sustained damages as set forth herein for which Mallory is liable.

## COUNT III

**TENNESSEE CONSUMER PROTECTION ACT (DEFENDANT MALLORY)**

49. Plaintiffs hereby incorporate and re-allege paragraphs 1-48 above as if fully set forth herein.

50. To the extent Mallory attempts to disclaim a duty to Plaintiffs, Mallory intentionally deceived Plaintiffs into believing that the Equipment was guaranteed safe carriage.

51. Mallory's willful and knowing deceptive conduct constitutes an unfair or deceptive trade practice or act under the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-104, including, but not limited to, § 47-18-104(27).

52. Mallory's deceptive acts caused Plaintiffs to suffer any uninsured loss as a result of damage to the Equipment.

53. Plaintiff's are thus entitled to recover under Tennessee Code Annotated § 47-18-109.

## COUNT IV

**PROMISSORY ESTOPPEL AND DETRIMENTAL RELIANCE
(DEFENDANT MALLORY)**

54. Plaintiffs hereby incorporate and re-allege paragraphs 1-53 above as if fully set forth herein.

55. Mallory advised and assured Plaintiffs that Mallory's insurance carrier would provide coverage for the loss and injury to the Equipment.

56. Mallory advised and assured Plaintiffs that Mallory would lodge appropriate complaints with the trucking companies or other transporters which handled the Equipment at Mallory's direction during the period in which the damage occurred.

57. Mallory reasonably expected that Plaintiffs would rely on Mallory's representations.

58. Plaintiffs reasonably and justifiably relied to their detriment on the representations and assurances made to them by Mallory and expected that their loss would be covered by Mallory's insurance and/or satisfied through the claims lodged by Mallory as Mallory represented.

59. Mallory has failed to provide insurance coverage and has failed to lodge and/or to enforce any claims filed on Plaintiffs' behalf for loss or injury to the Equipment.

60. Injustice and inequity can only be avoided by enforcement of Mallory's representations and assurances.

## COUNT V

**LIABILITY UNDER THE CARMACK AMENDMENT (DEFENDANTS JALAR, HARRINGTON, AND JOHN DOES 1 THROUGH 10)**

61. Plaintiffs hereby incorporate and re-allege paragraphs 1-60 above as if fully set forth herein.

62. Defendants Jalar, Harrington, and John Does 1 through 10 owed a duty to Plaintiffs based on contractual privity or based on Plaintiffs' status as third party beneficiary of contracts for interstate shipping to transport the Equipment with reasonable care.

63. Defendants Jalar, Harrington, and John Does 1 through 10 negligently performed contracts for shipment of the Equipment in interstate commerce, resulting in substantial damage to the Equipment.

WHEREFORE, Competition Cams, Inc. and Racing Head Services, LLC respectfully demand judgment against Mallory Alexander International Logistics, LLC, Jalar Transportation, Inc., Harrington Transportation, Inc., and John Does 1 through 10, jointly and severally, as follows:

    a.    Compensatory damages compensating Plaintiffs for the loss and injury to the Equipment caused by Mallory in an amount to be determined by this Court but no less than $350,000.00;

    b.    Damages for Plaintiffs' lost profits and damage to reputation;

    c.    Storage costs, transportation costs, and the costs of this action;

    d.    Consequential damages;

    e.    Incidental damages;

    f.    Treble damages;

    g.    Attorneys fees;

    h.    Pre-judgment interest from the expected date of delivery and post-judgment interest; and

    i.    Such other and further relief as the Court may deem just and equitable.

Competition Cams, Inc. and Racing Head Services, LLC request a trial by jury.

Respectfully submitted,

s/ Kristen C. Wright
John S. Golwen (BPR # 014324)
Kristen C. Wright (BPR # 021771)
Colleen D. Hitch (BPR # 024127)
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, Tennessee 38103
Telephone: (901) 543-5900
Facsimile:  (901) 543-5999
kwright@bassberry.com

*Attorneys for Plaintiffs*